Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FORESCOUT TECHNOLOGIES, INC., MARK JENSEN, YEHEZKEL YESHURUN, ENRIQUE SALEM, THERESIA GOUW, JAMES BEER, MICHAEL DECESARE, DAVID G. DEWALT, ELIZABETH HACKENSON and KATHY MCELLIGOTT,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20 (a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

- 1 -
CLASS ACTION COMPLAINT

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and those similarly situated, by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff, on behalf of himself and all other public stockholders of Forescout Technologies, Inc. ("Forescout" or the "Company"), against Forescout and the members of Forescout's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a) and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to an investor group led by Advent International Corporation ("Advent") and Crosspoint Capital Partners ("Crosspoint") through Advent's affiliates Ferrari Group Holdings, L.P. ("Parent") and Ferrari Merger Sub, Inc. ("Purchaser") as a result of an unfair process for an unfair price, and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed all cash transaction valued at approximately $1.43 billion (the "Proposed Transaction").

2.      On July 15, 2020, Forescout and Advent issued a joint press release announcing that they had entered into an Amended and Restated Agreement and Plan of Merger dated July 15, 2020 (the "Amended Merger Agreement") to sell Forescout to Advent.  Under the terms of the Amended Merger Agreement, each holder of Forescout common stock will receive $29.00 in cash for each share of Forescout common stock they own (the "Offer Price").  Pursuant to the Amended Merger

CLASS ACTION COMPLAINT

Agreement, Purchaser commenced the Tender Offer on July 20, 2020. The Tender Offer is scheduled to expire at the end of the day, one minute after 11:59 p.m., Eastern time, on August 14, 2020.

3.      The Offer Price is a $4.00 per share reduction from the initial Agreement and Plan of Merger entered into between the Company and an investor group led by Advent on February 6, 2020 ("Original Merger Agreement") for $33.00 per share, or approximately $1.9 billion.

4.      On July 20, 2020, Forescout filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

5.      The Proposed Transaction is unfair and undervalues the Company for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which, following entry into the Original Merger Agreement, the Board kowtowed to Advent and accepted the lowered Offer Price, despite standalone value indications for Forescout above the Offer Price and the Company's announcement of preliminary second quarter 2020 total revenue in the range of $78 - $82 million, up 40% quarter-over-quarter at the midpoint of the range.

6.      It appears that the Board has entered into the Proposed Transaction at a reduced price to procure for themselves and senior management of the Company unique benefits with no thought to the Company's public stockholders. For instance, according to the Recommendation Statement, Parent and certain holders of Forescout shares and holders of Forescout stock-based awards and/or options, each of which may include Forescout's executive officers, may, following consummation of the Tender Offer and immediately prior to the closing of the Proposed Transaction, have the opportunity to roll over their shares, stock-based awards and/or options into equity interests in the post-merger entity. Thus, certain defendants have the opportunity to participate in the future earnings or growth of Forescout and will benefit from any appreciation in value of the surviving corporation, an opportunity not afforded to Forescout's public stockholders.

7.    In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, and due care by, *inter alia*, (i) agreeing to sell Forescout without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Advent without regard for Forescout's public stockholders. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Forescout stockholders.

8.    Finally, in violation of the Exchange Act and their fiduciary duties, Defendants caused to be filed the materially deficient Recommendation Statement on July 20, 2020 with the SEC in an effort to solicit stockholders to tender their Forescout shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient and deprives Forescout's stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (ii) Morgan Stanley's and Company insiders' potential conflicts of interest; and (iii) the background of the Proposed Transaction.

9.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**JURISDICTION AND VENUE**

CLASS ACTION COMPLAINT

10.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction) and supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367(a) because the state law claims form part of the same case or controversy.

11.     The Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; and (iii) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Forescout common stock who are being and will harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

14.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of July 15, 2020 there were 49,602,911

shares of Forescout common stock issued and outstanding.  The actual number of
public stockholders of Forescout will be ascertained through discovery;

b.  There are questions of law and fact which are common to the Class, including *inter
alia*, the following:

    i.    Whether Defendants have violated the federal securities laws;

    ii.    Whether Defendants made material misrepresentations and/or omitted
material facts in the Recommendation Statement; and

    iii.    Whether Plaintiff and the other members of the Class have and will
continue to suffer irreparable injury if the Proposed Transaction is
consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel
experienced in litigation of this nature and will fairly and adequately protect the
interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and
Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would
create a risk of inconsistent or varying adjudications with respect to individual
members of the Class which would establish incompatible standards of conduct
for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this
litigation and, thus, a class action is superior to other available methods for the fair
and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect
to the matters complained of herein, thereby making appropriate the relief sought

herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

15.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public stockholders of Forescout and owe them a duty of care, loyalty, good faith, candor, and independence.

16.    To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that: (a) adversely affects the value provided to the corporation's stockholders; (b) favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets; (c) adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or (d) will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

17.    In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from: (a) participating in any transaction where the Individual Defendants' loyalties are divided; (b) participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or (c) unjustly enriching themselves at the expense or to the detriment of the public stockholders.

18.    In accordance with their duties of care, loyalty and candor, the Individual Defendants are obligated to: (a) disclose all material information when soliciting stockholder action; and (b) to disclose material information in their possession bearing upon a board decision, particularly where the directors have a personal interest in the outcome of the board decision.

19.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, are violating, the fiduciary duties they owe to

CLASS ACTION COMPLAINT

Forescout, Plaintiff and the other public stockholders of Forescout, including their duties of loyalty, good faith, and due care.

20.    As a result of the Individual Defendants' divided loyalties, Plaintiff and the Class members will not receive adequate, fair or maximum value for their Forescout stock in the proposed Transaction.

## THE PARTIES

21.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Forescout.

22.    Defendant Forescout is a Delaware corporation, with its principal executive offices located at 190 West Tasman Drive, San Jose, California 95134.  The Company delivers device visibility and control to enable enterprises and government agencies to gain complete situational awareness of their environment and orchestrate action.  Forescout's common stock trades on the NASDAQ Global Select Market under the ticker symbol "FSCT."

23.    Defendant Mark Jensen ("Jensen") has been a director of the Company since May 2013.

24.    Defendant Yehezkel Yeshurun ("Yeshurun") has been a director of the Company since April 2000.  Defendant Yeshurun previously served as Chair of the Board from September 2001 to July 2003.

25.    Defendant Enrique Salem ("Salem") has been a director of the Company since September 2013.

26.    Defendant Theresia Gouw ("Gouw") serves as Co-Executive Chairman of the Board and has been a director of the Company since July 2001.

27.    Defendant James Beer ("Beer") has been a director of the Company since August 2016.

CLASS ACTION COMPLAINT

28.     Defendant Michael DeCesare ("DeCesare") has been President, Chief Executive Officer ("CEO") and a director of the Company since March 2015.

29.     Defendant David G. DeWalt ("DeWalt") has been Vice-Chair and a director of the Company since June 2015.

30.     Defendant Elizabeth Hackenson ("Hackenson") has been a director of the Company since June 2019.

31.     Defendant Kathy McElligott ("McElligott") has been a director of the Company since June 2019.

32.     Defendants identified in paragraphs 23-31 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

33.     Headquartered in Boston, Massachusetts, and founded in 1984, Advent is one of the largest and most experienced global private equity firms.  With offices on four continents, it maintains a globally integrated team of more than 200 investment professionals, focused on buyouts and growth equity investments in five core sectors.  Since initiating its private equity strategy in 1989, Advent has invested $48 billion in over 350 private equity investments across 41 countries, and as of September 30, 2019, managed $56.6 billion in assets.

34.     Crosspoint is a private equity investment firm headquartered in Woodside, California, focused on the cybersecurity and privacy categories.

35.     Parent is a Delaware limited partnership and an affiliate of Advent.

36.     Purchaser is a Delaware corporation and a wholly owned indirect subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

CLASS ACTION COMPLAINT

**Background of the Company**

37.     Founded in 2000 and headquartered in San Jose, California, Forescout is a leading provider of device visibility and control solutions.  The Company's unified security platform enables enterprises and government agencies to gain complete situational awareness of their extended enterprise environment and orchestrate actions to reduce cyber and operational risk.  Forescout products deploy quickly with agentless, real-time discovery and classification of every IP-connected device, as well as continuous posture assessment.  As of December 31, 2019, more than 3,700 customers in over 90 countries rely on Forescout's infrastructure-agnostic solution to reduce the risk of business disruption from security incidents or breaches, ensure and demonstrate security compliance and increase security operations productivity.

38.     On February 6, 2020, Forescout announced its fourth quarter and full year 2020 financial results, including fourth quarter revenue of $91.3 million, compared to $84.7 million in the fourth quarter of 2018, and full year revenue of $336.8 million, compared to $297.7 million in the full year 2019.  License revenue for the quarter was $48.4 million, an increase of 2% over the fourth quarter of 2018.  Subscription revenue was $37.6 million, an increase of 14% over the fourth quarter of 2018, and professional services revenue was $5.3 million, an increase of 23% over the fourth quarter of 2018.  Defendant DeCesare commented on the results, stating:

> Our results for the fourth quarter reflect strength across many parts of the business as we continue to see strong demand for device control and visibility across all segments of the market. We expanded our market footprint with the addition of 160 new logos and 3.2 million new devices under management and we are making progress toward our transition to a more ratable revenue model, as demonstrated by a greater mix of term-based license contracts and strong initial results for eyeSegment, our first software as a service product. We continued to face macro and execution challenges in EMEA, however, we are taking steps to improve those variables that are within our control. Finally, we are excited about the transaction we announced today with Advent International, which positions us for long-term success in the large and growing market for device visibility and control.

39.    On May 11, 2020, Forescout announced its first quarter 2020 financial results. For the quarter, although the Company saw a decline in total revenue primarily due to the COVID-19 pandemic, subscription revenue increased 11% to $37.5 million compared to the first quarter of 2019 and professional services revenue increased 18% to $4.8 million compared to the first quarter of 2019.

40.    On July 8, 2020, the Company announced preliminary second quarter 2020 revenue in the range of $78 million to $82 million, a 40% increase compared to the first quarter of 2020. Defendant DeCesare commented on the results, stating:

> I am extremely proud of our team's performance. We remained focused and executed well, despite macroeconomic challenges and the impact of ongoing litigation with Advent International. The strength of our quarterly results shows the compelling value proposition for Forescout's solutions and that we can execute and deliver despite obstacles. We believe Advent's claims are without merit, and we are continuing to pursue our rights under the existing merger agreement.

41.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Forescout. Clearly, based upon these positive financial results and outlook, the Company is poised for future success and should command higher consideration than the Offer Price in the Proposed Transaction.

42.    Despite this upward trajectory and improved financial results, the Individual Defendants have caused Forescout to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

43.    On February 6, 2020, Forescout announced it had entered into the Original Merger Agreement with Parent and Purchaser for $33.00 per share.

44.    Thereafter, on April 23, 2020, Forescout stockholders approved the merger and the other transactions contemplated by the Original Merger Agreement.

45.    On May 15, 2020, Parent informed Forescout by letter (the "May 15 Letter") that Parent had concluded that certain closing conditions provided in the Original Merger Agreement

could not be met, and that as a result Parent would not consummate the acquisition of Forescout pursuant to the terms of the Original Merger Agreement on May 18, 2020, as scheduled.  In the May 15 Letter, Parent described its concerns about Forescout's financial condition in light of Forescout's financial results for the first quarter of 2020.

46.     On May 18, 2020, Forescout publicly announced that Forescout and Advent were engaged in ongoing discussions regarding timing to close and the terms of the Original Merger Agreement.

47.     On May 20, 2020, Forescout publicly announced that it had commenced litigation against Parent and Purchaser on May 19, 2020, in the Delaware Court of Chancery captioned *Forescout Technologies, Inc. v. Ferrari Group Holdings, L.P., et al.*, C.A. No. 2020-0385-SG ("Advent Litigation"), in order to compel them to complete the acquisition of Forescout pursuant to the terms of the Original Merger Agreement.

48.     Following commencement of the Advent Litigation, the parties engaged in expedited litigation, including discovery, based on a trial date set by the court of July 20, 2020.

49.     Thereafter, and in order to secure the lucrative benefits that would flow to them through a transaction with Advent, the Board met regularly to, among other things, review and discuss the status of the Advent Litigation and discuss Forescout's options.  This resulted in conversations with Advent for different per share prices (all representing values to Forescout stockholders that were less than the $33.00 per share in cash contemplated by the Original Merger Agreement).

50.     Even though Advent was supposedly harboring concerns about Forescout's financial condition in light of Forescout'' financial results for the first quarter of 2020, as expressed in its May 15 Letter, on May 27, 2020, in lieu of completing the acquisition of Forescout pursuant to the terms of the Original Merger Agreement, Advent made a proposal to invest $300 million in Forescout. Notably, an investment in Forescout would not have allowed the Company's executives and directors

CLASS ACTION COMPLAINT

to reap the change in control payments and acceleration of stock options and restricted stock units that would result from a completed transaction with Advent.

51.     Later on May 27, 2020, the Strategic Committee of the Board ("Strategic Committee") met and considered the $300 million investment proposal from Advent.  The Strategic Committee concluded that this proposal did not appropriately value Forescout in light of a number of factors, including the Advent Litigation.

52.     On May 28, 2020, Morgan Stanley spoke with Advent regarding alternative transaction structures, including a structure where, in lieu of completing the acquisition of Forescout pursuant to the terms of the Original Merger Agreement, Advent would acquire Forescout for per share consideration composed of a combination of $23.00 in cash and a "seller note" with a notional value of $10.00.

53.     On June 1, 2020, Advent proposed two alternative transactions, each in lieu of completing the acquisition of Forescout pursuant to the terms of the Original Merger Agreement: (1) the investment of $700 million in Forescout; and (2) an acquisition of Forescout for per share consideration composed of a combination of $23.00 in cash and a contingent value right with a value of up to $7.00 depending on Forescout's performance following its acquisition by Advent.

54.     The next day, on June 2, 2020, the Strategic Committee met and concluded that neither proposal appropriately valued Forescout in light of a number of factors, including the Advent Litigation.

55.     On June 18, 2020, Advent made a proposal to acquire Forescout for $25.00 per share in cash through a tender offer.

56.     Again, on June 19, 2020, the Strategic Committee met and concluded that this proposal did not appropriately value Forescout in light of a number of factors, including the Advent Litigation. Instead of standing firm and holding Advent to the terms of the Original Merger Agreement, in order

to receive the lucrative benefits flowing from a transaction with Advent, the Strategic Committee instructed Morgan Stanley to, and Morgan Stanley subsequently did, inform Advent that Forescout sought a renegotiated transaction that valued Forescout at $31.00 per share.

57.     Throughout the rest of June and to the middle of July, the parties exchanged proposals for a transaction with terms that were all less favorable to Forescout's stockholders than the original $33.00 agreement.

58.     On July 8, 2020, Forescout publicly announced its preliminary results for the second quarter of 2020.  These preliminary results included a range of $78 million to $82 million for total revenue, a 40 % increase quarter-over-quarter at the midpoint of the range.

59.     On July 11, 2020, Advent made a proposal to acquire Forescout for $29.00 per share in cash through a tender offer.

60.     The next day, on July 12, 2020, the Strategic Committee met to consider the $29.00 per share in cash proposal from Advent.  The Strategic Committee concluded that it supported further pursuing this proposal and discussed the various financial cases that could be used for the purposes of Morgan Stanley's financial analysis of Forescout.

61.     Thereafter, at a July 13, 2020 Board meeting, Morgan Stanley reviewed its preliminary financial analysis of the proposed transaction consideration of $29.00 per share in cash, based on the Company's "Updated Alternate Plan" and the "July Case.".  The Company's Updated Alternate Plan is an update to Forescout's unaudited operating plan for 2020, reflecting (1) a bottoms-up analysis of Forescout's sales pipeline; (2) a bottoms-up expense analysis; and (3) Forescout's actual financial results for the first quarter of 2020 and preliminary actual financial results for the second quarter of 2020.  The Company's July Case was prepared by Forescout management for scenario and business planning purposes and purports to represent an estimate by Forescout management of Forescout's financial performance for the remainder of 2020 through 2023 in light of current conditions (including

CLASS ACTION COMPLAINT

the impact on Forescout of (1) COVID-19 (novel coronavirus); (2) the entry into the Original Merger Agreement; and (3) the Advent Litigation), business opportunities, sales pipeline and Forescout's expense profile.

62.    Notably, the July Case forecasts are much more pessimistic than the Company's Updated Alternate Plan and appear to have been created solely to fit the insufficient Offer Price into a range of fairness.

63.    The Board approved the use of the Updated Alternate Plan and the July Case for purposes of Morgan Stanley's financial analysis of Forescout.

64.    Despite, the Company's positive preliminary results for the second quarter of 2020, less than a week later on July 14, 2020, the Board met and approved entry into the Amended Merger Agreement and the $29.00 Offer Price.

65.    Early on July 15, 2020, Forescout and Advent publicly disclosed the entry into the Amended Merger Agreement.  Contemporaneous with signing the Amended Merger Agreement, Forescout, Parent and Purchaser also signed a settlement agreement to settle and dismiss with prejudice all claims and defenses in the Advent Litigation.

66.    On July 20, 2020, Parent commenced the Tender Offer.

**The Proposed Transaction**

67.    On July 15, 2020, Forescout and Advent issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SAN JOSE, Calif. and BOSTON, Mass., July 15, 2020 -- Forescout Technologies, Inc. (Nasdaq: FSCT), the leader in device visibility and control, and Advent International ("Advent"), one of the largest and most experienced global private equity investors, today announced that the companies have agreed to amend the terms of their previously announced transaction. The Forescout Board of Directors has unanimously approved a revised definitive agreement under which Advent will acquire all outstanding shares of Forescout common stock for $29.00 per share. Advent has partnered with Crosspoint Capital Partners, a private equity investment firm focused on cybersecurity and privacy industries, as an advisor on this transaction.

CLASS ACTION COMPLAINT

Concurrently with executing the amended merger agreement, Forescout and Advent reached a settlement agreement as a result of which the pending litigation in the Delaware Court of Chancery will be dismissed.

"We continue to believe that Advent and Crosspoint Capital Partners are the right partners for Forescout, and we are pleased to have reached this agreement," said Michael DeCesare, CEO and President of Forescout. "As a private company and with the resources, expertise and support of Advent and Crosspoint Capital Partners, we will remain committed to helping customers solve their most pressing security challenges while applying greater focus to our strategic cloud transformation and our transition to a recurring subscription business model. We look forward to working with Advent and Crosspoint Capital Partners to complete the transaction and build our exciting next chapter."

"The fundamental strengths that first attracted Advent to Forescout – its differentiated technology, record of innovation, talented employee base and relentless focus on its customers – continue to make this business a compelling platform and critical player in the cybersecurity ecosystem," said Bryan Taylor, head of Advent's technology investment team and a Managing Partner in Palo Alto. "Advent and Forescout worked in good faith to reach a solution that could benefit all stakeholders. We look forward to helping Forescout continue to deliver world-class cybersecurity solutions to customers for years to come."

"We believe revising the terms of the previously announced transaction is the best path forward for Forescout because it removes the significant ongoing distraction of the pending litigation and delivers immediate and certain value to Forescout's shareholders. The Board of Directors unanimously recommends that shareholders tender their shares in support of the transaction," said Theresia Gouw, Chair of the Board of Directors.

Forescout's Board and management will be further strengthened with the additions of Crosspoint Capital Partners' Greg Clark and Nicholas Noviello following commencement of the tender offer. Mr. Clark, Managing Partner of Crosspoint Capital Partners and former CEO of Symantec and Blue Coat, both leading cybersecurity companies, will join Forescout's Board of Directors. Mr. Noviello, former Executive Vice President and CFO of Symantec and of NetApp, and CFO of Blue Coat, has over 28 years of global finance and operations, process improvement and company transformation leadership experience, and will join Forescout as COO.

**Transaction Details**

Under the terms of the revised merger agreement, Advent will commence a tender offer on or before July 20, 2020, to acquire all of the outstanding shares of Forescout common stock for a price of $29.00 per share. The closing of the tender offer is subject to certain limited customary conditions, including the tender by Forescout shareholders of at least one share more than 50% of Forescout's issued and outstanding shares. Funds affiliated with Advent have committed to provide a full equity backstop

CLASS ACTION COMPLAINT

in support of the transaction. The transaction is expected to close in the third quarter of 2020.

Promptly following completion of the tender offer, Advent will acquire any shares of Forescout that are not tendered in the tender offer through a second-step merger under Delaware law for consideration equal to the tender offer price. Following the transaction, Forescout will become a privately held company with the flexibility to continue investing in the development and deployment of leading-edge cyber security products and solutions that serve the evolving needs of enterprise customers.

The Forescout Board unanimously recommends that shareholders tender their shares in support of the transaction

### The Inadequate Merger Consideration

68.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the Offer Price.

69.    Specifically, the standalone value indications resulting from the Company's financial advisor Morgan Stanley's financial analyses utilizing the Company's Updated Alternate Plan - reflecting (1) a bottoms-up analysis of Forescout's sales pipeline; (2) a bottoms-up expense analysis; and (3) Forescout's actual financial results for the first quarter of 2020 and preliminary actual financial results for the second quarter of 2020 - point to the inadequacy of the Offer Price.

70.    For example, the implied per share standalone value ranges for Forescout resulting from Morgan Stanley's *Discounted Equity Value Analysis* and *Discounted Cash Flow Analysis* are $32.92 - $46.17 and $25.46 - $38.55, respectively, compared to the Offer Price of $29.00 per share.

71.    Additionally, the Company's stock closed as high as $39.87 per share within the past fifty-two weeks.

72.    Moreover, post-closure, Forescout stockholders will be frozen out of any future benefit from their investment in Forescout's bright future.

73.    It is clear from the flawed sales process and the facts set forth herein that the Proposed transaction is designed to maximize benefits for Advent and the Company's directors and executive

officers at the expense of Forescout stockholders, and which indicates that Forescout stockholders were not the overriding concern in the formation of the Proposed Transaction.

**Insiders' Interests in the Proposed Transaction**

74.    Forescout insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Forescout.

75.    Notably, Forescout insiders stand to reap substantial financial benefits for securing the deal with Advent.  Pursuant to the Amended Merger Agreement, all outstanding options, performance-based stock units ("PSU"), and restricted stock units ("RSU") will vest and convert into the right to receive cash payments.  The following table summarizes the value of the Company options, PSUs and RSUs that Company insiders stand to receive:

| Name | Shares Held Directly[1] | | In-the-Money Forescout Options[2] | | Forescout RSUs and PSUs[3] | | Total ($) |
| | Number of Shares (#) | Value of Shares ($) | Number of Shares Subject to Vested Portion (#) | Value of Shares Subject to Vested Portion ($) | Number of Shares (#) | Value ($) | |
|---|---|---|---|---|---|---|---|
| Michael DeCesare | 388,943 | 11,279,347 | 505,964 | 9,967,122 | 206,589 | 5,991,081 | 27,237,549 |
| Christopher Harms[4] | 134,068 | 3,887,972 | 22,212 | 424,693 | 92,830 | 2,692,070 | 7,004,735 |
| Pedro Abreu[5] | 18,505 | 536,645 | 142,340 | 2,840,663 | 65,869 | 1,910,201 | 5,287,509 |
| Darren J. Milliken[6] | 8,609 | 249,661 | 60,000 | 1,176,003 | 24,252 | 703,308 | 2,128,972 |
| Theresia Gouw[7] | 95,758 | 2,776,982 | | | | | 2,776,982 |
| James Beer | 18,118 | 525,422 | | | 25,000 | 725,000 | 1,250,422 |
| David DeWalt | 442,748 | 12,839,692 | | | 50,550 | 1,465,950 | 14,305,642 |
| Elizabeth Hackenson | 4,611 | 133,719 | | | 9,222 | 267,438 | 401,157 |
| Mark Jensen | 4,885 | 141,665 | 95,139 | 2,156,556 | | | 2,298,220 |
| Kathy McElligott | 4,611 | 133,719 | | | 9,222 | 267,438 | 401,157 |
| Enrique Salem[8] | 322,758 | 9,359,982 | | | | | 9,359,982 |
| Hezy Yeshurun[9] | 325,827 | 9,448,983 | | | | | 9,448,983 |

76.    Moreover, if they are terminated in connection with the Proposed Transaction, Forescout's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Michael DeCesare | 1,000,000 | 5,991,081 | 28,831 | 7,019,912 |
| Christopher Harms | 725,001 | 2,692,070 | 28,831 | 3,445,902 |
| Pedro Abreu | 750,000 | 1,910,201 | 28,831 | 2,689,032 |
| Darren J. Milliken | 495,175 | 703,308 | 9,190 | 1,207,673 |

77.     Furthermore, the Company's directors and executive officers may be able to reap the benefits of the future earnings or growth of Forescout and benefit from any appreciation in value of the surviving corporation, an opportunity not afforded to Forescout's public stockholders. Specifically, the Recommendation Statement sets forth:

> Parent and certain holders of Shares may, following consummation of the Offer and immediately prior to the closing of the Merger, agree that any such holder, which may include Forescout's executive officers, will contribute such Shares to Parent or a subsidiary thereof in exchange for equity interests in such entity (the Shares agreed to be so contributed pursuant to a definitive agreement between Parent and such holder are referred to as "Rollover Shares" and the holders of rollover shares are referred to, collectively, as the "Rollover Holders"). In addition, Parent and certain holders of Forescout Stock-Based Awards and/or Forescout Options, which may include Forescout's executive officers, may agree that such Forescout Stock-Based Awards and/or Forescout Options will convert into equity-based awards of Parent or an affiliate thereof in connection with the closing of the Merger, and the Forescout Stock-Based Awards and/or Forescout Options agreed to be so converted shall also be treated as Rollover Shares and the holders of such Forescout Stock-Based Awards and/or Forescout Options as Rollover Holders for purposes of this subsection.

Recommendation Statement at 18.

78.     Thus, while the Proposed Transaction is not in the best interests of Forescout stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Recommendation Statement**

79.     On July 20, 2020, the Board cause to be filed with the SEC a materially incomplete and misleading Recommendation Statement that, in violation of their fiduciary duties and federal securities laws, failed to provide the Company's stockholders with material information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction, that is necessary for the Company's stockholders to

CLASS ACTION COMPLAINT

make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

80.    Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; (ii) Morgan Stanley's and Company insiders' potential conflicts of interest; and (iii) the background of the Proposed Transaction.

***Omissions and/or Material Misrepresentations Concerning the Company's Financial Projections and Morgan Stanley's Financial Analyses***

81.    The Recommendation Statement omits material information regarding Company management's financial projections.

82.    For example, the Recommendation Statement fails to disclose the Company's tax savings from net operating loss utilization over the projection period, for each of the Updated Alternate Plan and July Case.

83.    Additionally, the Recommendation Statement fails to disclose: (i) when Company management created the July Case; (ii) the specific scenario and business planning purposes the July Case was prepared for; and (iii) how the assumptions underlying the Company's business opportunities, sales pipeline and expense profile differed from the Updated Alternate Plan and July Case.

84.    Moreover, the Recommendation Statement omits material information regarding Morgan Stanley's financial analyses.

85.    The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these

analyses.  Without this information, as described below, Forescout's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

86.    With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose: (i) the terminal values for the Company; (ii) quantification of the inputs and assumptions underlying the discount rate of 8.6%; (iii) projected net cash; and (iv) the fully diluted shares of Company common stock used in the analysis.

87.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the value of the Company's existing and newly created tax attributes; (ii) the terminal values for the Company for each of the Updated Alternate Plan and July Case; (iii) the metric the perpetuity growth rates were applied to in calculating the terminal values for the Company, and quantification thereof; (iv) the implied terminal multiples resulting from the analysis; (v) quantification of the inputs and assumptions underlying the discount rates ranging from 7.6% to 9.6%; and (vi) the fully diluted shares of Company common stock as of July 13, 2020, utilized in the analysis.

88.    Without such undisclosed information, Forescout stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to tender their shares in the Proposed Transaction or seek appraisal.

***Omissions and/or Material Misrepresentations Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest***

89.　　The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

90.　　The Recommendation Statement sets forth:

In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Forescout and have received approximately $10.5 million in fees in connection with such services. In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Advent and its affiliates (an affiliate of Advent is the ultimate controlling stockholder of Parent) and have received approximately $30 million to $50 million in fees in connection with such services. Morgan Stanley may also seek to provide financial advisory and financing services to Advent, Parent and Forescout and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

*Id.* at 53-54.　The Recommendation Statement, however, fails to disclose the specific financial advisory and financing services Morgan Stanley and its affiliates have provided to Forescout and Advent and its affiliates.

91.　　Additionally, the Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

92.　　The Recommendation Statement sets forth:

Parent and certain holders of Shares may, following consummation of the Offer and immediately prior to the closing of the Merger, agree that any such holder, which may include Forescout's executive officers, will contribute such Shares to Parent or a subsidiary thereof in exchange for equity interests in such entity (the Shares agreed to be so contributed pursuant to a definitive agreement between Parent and such holder are referred to as "Rollover Shares" and the holders of rollover shares are referred to, collectively, as the "Rollover Holders"). In addition, Parent and certain holders of Forescout Stock-Based Awards and/or Forescout Options, which may include Forescout's executive officers, may agree that such Forescout Stock-Based Awards and/or Forescout Options will convert into equity-based awards of Parent or an affiliate thereof in connection with the closing of the Merger, and the Forescout Stock-Based Awards and/or Forescout Options agreed to be so converted shall also be treated as Rollover Shares and the holders of such Forescout Stock-Based Awards and/or Forescout Options as Rollover Holders for purposes of this subsection.

*Id.* at 18.　The Recommendation Statement, however, fails to disclose the specific details of all discussions and negotiations that occurred between Advent and Forescout executive officers and

- 22 -

directors with respect to the contribution of Forescout shares in exchange for equity interests in Advent or a subsidiary thereof and conversion of Forescout options and/or stock-based awards into equity-based awards of Advent or an affiliate thereof, including who participated in all such communications, when they occurred and their content.  The Recommendation Statement further fails to identify the Forescout executive officers and directors who have agreed to rollover their Forescout shares in exchange for equity interests in Advent or a subsidiary thereof and convert their Forescout options and/or stock-based awards into equity-based awards of Advent or an affiliate thereof.

93.    The Recommendation Statement further sets forth:

> As of the date of this Schedule 14D-9, none of Forescout's executive officers have (1) reached an understanding on potential employment or other retention terms with the Surviving Corporation or with Advent, Parent or Purchaser; or (2) entered into any definitive agreements or arrangements regarding employment or other retention with the Surviving Corporation or with Advent, Parent or Purchaser to be effective following the consummation of the Transactions. However, prior to the Effective Time, Advent, Parent or Purchaser may initiate discussions regarding employment or other retention terms and may enter into definitive agreements regarding employment or retention for certain of Forescout's employees to be effective as of the Effective Time .

*Id.* at 16.  However, in the July 15, 2020 press release announcing the Proposed Transaction, defendant DeCesare states, "We look forward to working with Advent and Crosspoint Capital Partners to complete the transaction and build our exciting next chapter."  Yet, the Recommendation Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Advent and Forescout executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Recommendation Statement further fails to disclose whether any of Advent's proposals or indications of interest mentioned management retention or consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

94.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This

information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

***Omissions and/or Material Misrepresentations Concerning the Background of the Proposed Transaction***

95.    The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

96.    Specifically, the Recommendation Statement sets forth that in recommending that Forescout stockholders tender their shares pursuant to the Tender Offer, the Board considered a number of uncertainties and risks and other potentially negative factors, including "the other potential alternative strategies available to Forescout, which, despite significant uncertainty, had the potential to result in a more successful and valuable company." *Id*. at 39.  The Recommendation Statement fails, however, to delineate or provide any detail of the other strategic alternatives available to Forescout that had the potential to result in a more successful and valuable company.  This information is plainly material to Forescout stockholders who are being asked to tender their shares in favor of the Proposed Transaction and foreclose their ability to participate in the future earnings or growth of Forescout.

97.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Forescout will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claim for Breach of Fiduciary Duties**
**(Against the Individual Defendants)**

98.    Plaintiff repeats all previous allegations as if set forth in full herein.

99.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

100.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Forescout.

101.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Forescout by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Forescout to its public stockholders.

102.    Indeed, the Individual Defendants have accepted an offer to sell Forescout at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

103.    Moreover, the Individual Defendants breached their duty of care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

104.    The Individual Defendants dominate and control the business and corporate affairs of Forescout, and are in possession of private corporate information concerning Forescout's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Forescout which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

105.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

106.   As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Forescout's assets and have been and will be prevented from obtaining a fair price for their common stock.

107.   Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm to the Class.

108.   Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT II

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**
**(Against Forescout)**

109.   Plaintiff repeats all previous allegations as if set forth in full herein.

110.   Defendant Forescout knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

111.   As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

112.   Plaintiff and the members of the Class have no adequate remedy at law.

CLASS ACTION COMPLAINT

## COUNT III

### Violations of Section 14(e) of the Exchange Act
### (Against All Defendants)

113.    Plaintiff repeats all previous allegations as if set forth in full herein.

114.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

115.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

116.    As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek to exercise his appraisal rights.

## COUNT IV

### Violations of Section 20(a) of the Exchange Act
### (Against All Defendants)

117.    Plaintiff repeats all previous allegations as if set forth in full herein.

118.    The Individual Defendants acted as controlling persons of Forescout within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Forescout, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation

CLASS ACTION COMPLAINT

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

119.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

120.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Recommendation Statement.

121.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

122.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

123.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, Forescout's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Forescout stockholders;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing Defendants to account to plaintiff and the Class for damages sustained because of the wrongs complained of herein;

F.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all claims and issues so triable.

CLASS ACTION COMPLAINT

Dated: July 31, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: /s/ Joel E. Elkins

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
           -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT